653 S.E.2d 667

**Stacey A. STRUM and Nicole A. Elliott, as Co–Administratrix of the Estate of Cheryl Ann Kettlewell, Deceased, Plaintiffs Below, Appellees**

v.

**Traci Marie SWANSON; State Farm Mutual Automobile Insurance Company, A Foreign Corporation; Allstate Indemnity Company, and Debbie Dalrymple and Stephen Kelley, doing Business as The Lounge, A Liquor Tavern in Friendly, Tyler County, West Virginia; Defendants Below,**

**State Farm Mutual Automobile Insurance Company, a Foreign Corporation, Defendant Below, Appellant.**

No. 33285.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 2007.

Decided Oct. 26, 2007.

E. ·Kay Fuller, Christopher R. Moore, Martin & Seibert, L.C., Martinsburg, WV, and Michael G. Gallaway, Spilman, Thomas & Battle, P.L.L.C., Wheeling, WV, for the Appellant.

Christine Machel, William E. Watson, William E. Watson & Associates, Wellsburg, WV, for the Appellee.

Mychal Sommer Schulz, Jill Cranston Bentz, Ryan J. Aaron, Dinsmore & Shohl, L.L.P., Charleston, WV, for Amicus Curiae, West Virginia Insurance Federation.

ALBRIGHT, Justice.

This is an appeal by State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") from an April 19, 2006, order of the Circuit Court of Tyler County granting summary judgment to the Appellees, Stacey A. Strum and Nicole A. Elliott, acting as co-administratrixes of the Estate of Cheryl Ann Kettlewell, in an underinsured motorist (hereinafter "UIM") coverage claim. The circuit court also denied State Farm's motion for summary judgment. Upon thorough review of the briefs, arguments of counsel, record, and applicable precedent, this Court reverses the decision of the lower court and remands this matter for entry of an order granting State Farm's motion for summary judgment and dismissing this case from the docket.

I.   Factual and Procedural History

Ms. Cheryl Kettlewell, the mother of the Appellees, die d on November 25, 1999, in a single vehicle accident. At the time of the accident, Ms. Kettlewell was a passenger in a vehicle operated by Traci Marie Swanson. Ms. Swanson was intoxicated, lost control of the vehicle, and collided .with a wall. The vehicle driven by Ms. Swanson provided liability policy limits of $20,000, which were paid to the Estate of Cheryl Kettlewell. The vehicle involved in the accident was not insured under the individual policies of either of the Appellees, and Ms. Kettlewell's automobile insurance policy did not include UIM coverage.

The Appellees are the two adult daughters of Ms. Kettlewell and serve as co-administratrixes of her estate. In that capacity, they initiated a wrongful death action and sought a declaration that UIM coverage on their own individual polices should provide recovery in the wrongful death action for their emotional distress. Ms. Kettlewell was not a named insured under either of the two policies maintained by the Appellees. Only Ms. Kettlewell and her minor daughter, Melinda, were residents of the Kettlewell household at the time of the accident.

Appellee Ms. Elliott maintained an insurance policy issued by the Appellant, State Farm, including $100,000 for UIM coverage.[1] Ms. Elliott's State Farm policy contained the following language:

> [State Farm] will pay compensatory damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be sustained by an insured. The bodily injury or property damage must be caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle.

The circuit court granted the Appellees' motion for summary judgment, finding that the Appellees were entitled to collect damages under their individual UIM policies through the wrongful death statute and that the West Virginia UIM statute, West Virginia Code § 33–6–31(b) (1998) (Repl.Vol.2006), does not permit the limitation of damages to "bodily-injury-type damages."

State Farm appeals that decision, contending that the circuit court erred in holding that Ms. Elliott is entitled to collect emotional distress damages in her individual capacity in the wrongful death claim since civil actions instituted through the wrongful death statute can be pursued only in the capacity of a personal representative. State Farm also contends that even if the wrongful death statute would not prohibit recovery under these circumstances, the circuit court was incorrect in its conclusion that emotional dis-

tress damages were required under the specific language of Ms. Elliott's policy.

## II. Standard of Review

■ This Court has consistently maintained that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." Syl. Pt. 2, *Riffe v. Home Finders Assoc., Inc.,* 205 W.Va. 216, 517 S.E.2d 313 (1999); *see also Dairyland Ins. Co., v. Fox,* 209 W.Va. 598, 550 S.E.2d 388 (2001). The *Dairyland* Court emphasized that " '[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law.' " *Id.* at 601, 550 S.E.2d at 391 (quoting *Murray v. State Farm Fire & Cas. Co.,* 203 W.Va. 477, 483, 509 S.E.2d 1, 7 (1998) (additional citations omitted)).

■ Syllabus point one of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), instructs that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" In syllabus point one of *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992), this Court stated that " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." This court has also explained that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). With those standards of review as guidance, we address the substantive arguments presented in this matter.

---

1. Ms. Elliott is personally insured by the Appellant, State Farm. However, Ms. Strum is personally insured by Allstate, and the Appellees' brief informed this Court that Allstate has settled the claim with Ms. Strum.

## III.   Discussion

The fundamental issue in this case is whether an individual is entitled to pursue a claim under the West Virginia wrongful death statute, seeking benefits through that individual's personal UIM insurance policy, when that individual is acting in his or her legal capacity as a personal representative of an estate and the decedent was not an insured under the UIM policy at issue.  The West Virginia wrongful death statute, West Virginia Code § 55–7–5 (1931) (Repl.Vol. 2000), provides as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.  No action, however, shall be maintained by the personal representative of one who, not an infant, after injury, has compromised for such injury and accepted satisfaction therefor previous to his death.  Any right of action which may hereafter accrue by reason of such injury done to the person of another shall survive the death of the wrongdoer, and may be enforced against the executor or administrator, either by reviving against such personal representative a suit which may have been brought against the wrongdoer himself in his lifetime, or by bringing an original suit against his personal representative after his death, whether or not the death of the wrongdoer occurred before or after the death of the injured party.

Further, West Virginia Code § 55–7–6 (1992) (Repl.Vol.2000), provides that only the personal representative of the deceased person is entitled to bring the wrongful death action, stating in relevant part as follows:

> (a) Every such action shall be brought by and in the name of the personal representative of such deceased person who has been duly appointed in this state, or in any other state, territory or district of the United States, or in any foreign country, and the amount recovered in every such action shall be recovered by said personal representative and be distributed in accordance herewith.  If the personal representative was duly appointed in another state, territory or district of the United States, or in any foreign country, such personal representative shall, at the time of filing of the complaint, post bond with a corporate surety thereon authorized to do business in this state, in the sum of one hundred dollars, conditioned that such personal representative shall pay all costs adjudged against him or her and that he or she shall comply with the provisions of this section.  The circuit court may increase or decrease the amount of said bond, for good cause.
>
> (b) In every such action for wrongful death, the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section.  If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two [§§ 42–1–1 et seq.] of this code.  If the jury renders only a general verdict on damages and does not provide for the distribution thereof, the court shall distribute the damages in accordance with the provisions of this subsection.
>
> (c)(1) The verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include soci-

ety, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (I) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses.

Based upon the applicable legislative mandates, it is essential to recognize that Ms. Elliott is not statutorily entitled to bring this wrongful death action in her individual capacity as a beneficiary, heir, or family member of the decedent. It is only in her capacity as a personal representative of the estate that she is entitled to bring this wrongful death action. That distinction is crucial in the analysis of the right of the Appellee to obtain benefits through her personal UIM policy in this matter.[2]

The inquiry regarding the right of a personal representative to recover in a wrongful death action through his or her own indi-

2.  The governing UIM statute is codified at West Virginia Code § 33-6-31. The relevant sections of that statute are reproduced below.

(b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two [§ 17D-4-2], article four, chapter seventeen-d of this code, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident: Provided, however, That such endorsement or provisions may exclude the first three hundred dollars of property damage resulting from the negligence of an uninsured motorist: Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, no insurer or insurance company providing a bargained for discount for multiple motor vehicles with respect to underinsured motor vehicle coverage shall be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured. "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (I) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

(c) As used in this section, the term "bodily injury" shall include death resulting therefrom and the term "named insured" shall mean the person named as such in the declarations of the policy or contract and shall also include such person's spouse if a resident of the same household and the term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above; and the term "uninsured motor vehicle" shall mean a motor vehicle as to which there is no: (I) Bodily injury liability insurance and property damage liability insurance both in the amounts specified by section two [§ 17D-4-2], article four, chapter seventeen-d of this code, as amended from time to time; or (ii) there is such insurance, but the insurance company writing the same denies coverage thereunder; or (iii) there is no certificate of self-insurance issued in accordance with the provisions of said section. A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown: Provided, That recovery under the endorsement or provisions shall be subject to the conditions hereinafter set forth.

vidual UIM policy has not been previously addressed in West Virginia. Jurisdictions confronting this issue are divided in their determinations of whether UIM provisions allow recovery for the wrongful death of a person not a named insured under the claimant's policy. A majority of those courts addressing the issue have disallowed such recovery, holding that a decedent's status as an insured is a necessary prerequisite for recovery and that a claimant's status as a personal representative of an estate is an insufficient nexus upon which to predicate recovery under that claimant's individual UIM policy.

### A. Reasoning of Decisions Prohibiting Recovery of UIM Benefits

A comprehensive discussion of this subject is contained in *Eaquinta v. Allstate Ins. Co.*, 125 P.3d 901 (Utah 2005). In *Eaquinta*, the Utah court concluded that a named insured was not entitled to recover UIM benefits for the death of an adult child who was not a covered person under the policy. The Utah court, in this matter of first impression, explained:

> There is only one issue presented on appeal: Does Utah's Insurance Code mandate that Allstate provide UIM coverage to Glorya Eaquinta for the wrongful death of her son, when her son was not named in her insurance policy and did not reside in her household, and where no car insured by Glorya Eaquinta was involved in the accident? We conclude that it does not.

125 P.3d at 903. In examining the governing Utah statute, the *Eaquinta* court observed:

> On the one hand, because the language does not expressly limit UIM coverage to situations where a covered person sustains bodily injury, it could be interpreted to require UIM coverage in all situations where there is a covered person who is legally entitled to recover damages for another's injuries sustained at the hands of an underinsured motorist. On the other hand, the "bodily injury, sickness, disease, or death" language could reasonably be interpreted to refer to bodily injury, sickness, disease, or death sustained by a covered person under the relevant policy.

*Id.* at 904 (footnotes omitted). In footnote six of *Eaquinta*, the court observed that the "vast majority of courts have interpreted their respective UM/UIM statutes as only mandating coverage if an insured person sustains bodily injuries." *Id.* at 904 n. 6.

In footnote five, the *Eaquinta* court explained that a minority of the courts addressing the matter have adopted an approach allowing recovery in a similar circumstance. Having recognized the existence of a minority view, however, the *Eaquinta* court emphasized the transient nature of those rulings in the following observation: "Interestingly, of the six jurisdictions that have interpreted their statute as requiring UIM coverage, at least three of the respective legislatures have amended their statutes to disallow such coverage." *Id.* at 904, n. 5. Specifically, in reaction to the minority variant, the *Eaquinta* court noted that the legislatures of Ohio,[3] Maryland, and Nebraska[4] corrected their courts' interpretations and clarified that UIM

---

**3.** The Ohio experience is illuminating, providing an example of judicial interpretation of embattled legislation and responsive reformulation of such legislation. Initial interpretations of the Ohio UIM statutory scheme had permitted coverage. In *Dudash v. State Farm Mutual Automobile Insurance Co.*, 96 Ohio App.3d 348, 645 N.E.2d 79 (1994), for instance, adult daughters were determined to be entitled to UIM benefits for the wrongful death of their father despite the fact that the father was not a named insured under either daughter's UIM policy and did not reside with either daughter. Similarly, in *Moore v. State Automobile Mutual Insurance Co.*, 88 Ohio St.3d 27, 723 N.E.2d 97 (2000), the court held that the UIM statute did not permit an insurer to limit UIM coverage to require an in-

sured to suffer bodily injury, sickness, or disease in order to recover damages from the insurer. In response to *Moore*, the Ohio legislature addressed the issue and amended the UIM statute to specifically permit policies to limit coverage to bodily injury suffered by an insured. *See Westfield Natl. Ins. Co. v. Young*, 2006 WL 3182909, *3 (Ohio App.2006).

**4.** *See Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 589 A.2d 944, 949 (1991) superseded by statute as stated in *Nationwide Mut. Ins. Co. v. Johnson*, 159 Md.App. 345, 859 A.2d 279, 284 (2004); *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789, 792 (1971) superseded by Neb.Rev.Stat. § 44–6408 (2004).

212

coverage was not intended in such circumstances.

Beyond the confines of the statutory language utilized in each respective jurisdiction, the *Eaquinta* court also addressed considerations of public policy favoring the majority approach. The court observed as follows:

> An interpretation that would allow an insured to recover UIM benefits under her insurance policy for the death of a third party who is not covered under that policy would impose an unfair risk on insurance companies without the attendant consideration in the form of a premium and, possibly, increase the cost of insurance for all consumers. Such an interpretation would mandate an insurance company to provide UIM coverage to a wrongful death beneficiary simply because that beneficiary has an automobile insurance policy and the decedent happens to be a relative for which the beneficiary is legally entitled to maintain a wrongful death action. To judicially extend UIM coverage to include members of the family who are not residing with the insured would, in effect, require automobile insurance companies to insure any lineal descendant from whom an insured may inherit for hazards associated with the operation of vehicles.

125 P.3d at 905.

The Supreme Court of South Dakota also recognized the limitations of the minority view in *Gloe v. Iowa Mutual Insurance Co.*, 694 N.W.2d 238 (S.D.2005). The *Gloe* court examined the majority and minority views and specifically noted as follows:

> [M]ost significantly, this majority interpretation has been adopted whether or not the UM/UIM statute construed specifically referred to coverage for bodily injury or death of the insured. The majority of these cases interpreted statutes that, like ours, simply referred to coverage for one 'legally entitled to recover' based on bodily injury or death.

694 N.W.2d at 248–49 (footnote omitted). The *Gloe* court explained: "Because we reiterate that the purpose of these statutes is to protect the *insured* party *who is injured in an accident,* we agree with the reasoning of the clear majority of courts that have found no mandated UM or UIM coverage for the wrongful death of one not insured under the claimant's policy." *Id.* at 249; *see also State Farm Mut. Ins. Co. v. Wainscott,* 439 F.Supp. 840, 844 (D.Alaska 1977) (holding that wrongful death statute does not confer upon parent the right to bring suit except as personal representative of child's estate and personal representative is not covered under policy).

In *Livingston v. Omaha Property & Casualty Insurance Co.*, 927 S.W.2d 444 (Mo.App. 1996), a mother instituted a civil action against her insurance company seeking compensation under her UIM coverage subsequent to the death of her daughter. The daughter was not a named insured under the mother's policy and was not covered under any other terms of the mother's policy. In evaluating the matter, the Missouri Court of Appeals addressed policy and statutory language and concluded that survivors are not entitled to recover under their own UIM policy for the wrongful death of a person who is not an insured under that policy. 927 S.W.2d at 446.

The mother in *Livingston* had argued that because the guiding statute mandated UIM coverage for damages which an insured is legally entitled to recover, any policy provision limiting coverage to bodily injury or death to an insured violated public policy. The *Livingston* court rejected this argument, reasoning that an insured's UIM coverage is intended to provide indemnity for damages resulting from the insured's wrongful death, rather than the death of an individual who is not an insured under the terms of the policy.

This component of the examination was also addressed in *Farmers Insurance Exchange v. Chacon,* 939 P.2d 517 (Colo.App. 1997). In that case, the defendant father had submitted a claim as the natural guardian and next friend of his children for the wrongful death of their mother, from whom the father was divorced, under the UIM provisions of a policy issued to the father. The *Chacon* court held that such recovery was impermissible, based upon the fact that the "insured persons, here the children, did not sustain a bodily injury. Rather, their claim

is derived from their mother's injury, and thus, the trial court did not err in determining that the policy unambiguously provided no coverage for defendant's claim on behalf of the children." 939 P.2d at 520. The court observed:

> Had the mother lived, she could not have made a claim for her injuries under the liability provisions of defendant's policy. Her claim and any derivative claim to which the children might be entitled, which includes a wrongful death claim, would have been made under her own insurance policy. The children's claim, therefore, would necessarily be encompassed within the mother's claim against her own insurer.

*Id.* at 522.

In *Delancey v. State Farm Mutual Automobile Insurance Co.*, 918 F.2d 491 (5th Cir. 1990), the Fifth Circuit interpreted the Mississippi UIM statute that provided coverage to the insured for sums that the insured is legally entitled to recover as damages for bodily injury or death and held that the decedent's status as an insured is necessary condition for recovery. The *Delancey* court framed the evaluation by stating that "Mrs. Delancey's argument follows a progression from the language of the uninsured motorist provisions at issue, to the public policy behind Mississippi's uninsured motorist statute, to the cause of action provided by Mississippi's wrongful death statute." 918 F.2d at 493. Evaluating the governing statutes, the court concluded as follows:

> [N]either Mississippi's uninsured motorist statute nor its wrongful death statute mandates that policyholders be able to recover under their uninsured motorist policies for their damages resulting from the death of a third person. Policyholders' uninsured motorist coverage is triggered only when policyholders can collect damages by reason of bodily injuries to or death of an insured, and not when they can collect damages by reason of a derivative legal claim on behalf of a third party decedent who is not an insured under the policy sued on.

*Id.* at 495; *see also Bartning v. State Farm Fire & Cas.*, 164 Ariz. 370, 793 P.2d 127

(App.1990) (finding no coverage if person not insured could not have collected under the policy); *Gillespie v. Southern Farm Bureau Cas. Ins. Co.*, 343 So.2d 467 (Miss.1977) (holding that where there is no insured person and no insured vehicle under policy involved in accident, UM coverage is not available); *Gaddis v. Safeco Ins. Co.*, 58 Wash. App. 537, 794 P.2d 533 (1990) (holding that contracting parties could not have reasonably believed at time of entering into contract that UIM coverage would be triggered by death of a person not an insured).

As apparent from the above discussion, several courts have been confronted with the argument, present in this case, that recovery is necessitated by statutory language mandating coverage for the protection of insured persons who are legally entitled to recover damages due to bodily injury. In *State Farm Mutual Automobile Insurance Co. v. George*, 326 Ill.App.3d 1065, 261 Ill.Dec. 236, 762 N.E.2d 1163 (2002), for instance, the Illinois court construed a UIM statute providing coverage "for the protection of persons insured who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom." 261 Ill.Dec. 236, 762 N.E.2d at 1165 (quoting 215 ILCS 5/143a (1) (West 2000)). The *George* court reasoned as follows:

> The public policy underlying the Act is to place insured parties injured by an uninsured driver in substantially the same position they would have been in if the driver had been insured. *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill.2d 272, 279, 170 Ill.Dec. 351 [355], 592 N.E.2d 1031, 1035 (1992). The Act protects insured parties; obviously, it does not extend its protection to those who are uninsured. Further, collateral claims based on physical injury to another are derived only from the underlying claim of the physically injured person; they are not separate and distinct claims.

261 Ill.Dec. 236, 762 N.E.2d at 1165.

In *Temple v. Travelers Indemnity Co.*, 2000 WL 33113814 (Del.Super.2000), the Delaware court commented upon the basis of the claimants' argument as follows:

214

The foundation of the Plaintiffs' argument is that Mr. Temple's mere status as Mrs. Temple's administrator, which enables him to bring legal action in a wrongful death suit, is sufficient to connect that legal action to his own personal policy and to activate his underinsured benefits. This line of reasoning is so outlandish that it is difficult to articulate.

*Id.* at *5. In addressing the claimants' contentions, the *Temple* court explained:

The Court's initial reaction to the Plaintiffs' argument was to simply dismiss it as a desperate attempt to find a pool of money to compensate for the limited coverage available under the tortfeasor's policy. But, to the Court's surprise, it actually discovered several jurisdictions which appear to support the Plaintiffs' argument at least in the context of uninsured coverage. So, while the Court cannot say that the Plaintiffs' argument is totally without merit, this Judge finds it to be unpersuasive and inconsistent with any fair or reasonable reading of the statute or the terms of the policy.

*Id.* (footnote omitted). In denying the requested relief, the *Temple* court posed the following creative hypothetical to demonstrate the atrocious consequences of permitting such recovery:

Let us assume for a moment that Mark, a close personal friend, die d in an automobile accident. Because of our friendship and Mark's trust and confidence in me, he appoints me in his will as the executor of his estate. As executor, I sue the driver of the other car in a wrongful death action. Unfortunately, that driver has a policy limit of $50,000. Wanting to maximize recovery for the estate under the Plaintiffs' theory, after exhausting the $50,000, I could then turn to my automobile policy, which has uninsured/underinsured motorist benefits in the amount of $300,000 and attempt to recover an additional $250,000 in underinsured benefits. In essence, this theory would allow coverage to an individual, who was in no way connected to my automobile insurance policy, who did not reside in my household, nor who, if had survived the accident, would have had any

right of recovery under my policy. The Court cannot imagine that the General Assembly contemplated such conduct to be appropriate when the underinsurance coverage statute was enacted. The Plaintiffs' interpretation stretches beyond common sense and is simply a good lawyering effort to maximize his client's recovery.

*Id.; see also Bakken v. State Farm Mut. Auto. Ins. Co.,* 139 Ariz. 296, 678 P.2d 481, 485 (App.1983) (addressing specific statutory language permitting recovery for those legally entitled to recover damages and holding that that statute did not require payment for the death of non-insured person); *Smith v. Royal Ins. Co. of Am.,* 186 Cal.App.3d 239, 230 Cal.Rptr. 495, 496 (1986) (interpreting UIM statute to deny coverage); *Ivey v. Massachusetts Bay Ins. Co.,* 569 N.E.2d 692, 694 (Ind.App.1991) (finding no coverage); *Spurlock v. Prudential Ins. Co.,* 448 So.2d 218, 219 (La.App.1984) (stating that the UIM policy claim must be based upon bodily injury to an insured and that because the parties had stipulated that the decedent was not an insured under the policy's terms, it affirmed the grant of summary judgment denying coverage); *Lafleur v. Fidelity & Cas. Co. of New York,* 385 So.2d 1241, 1244 (La.App. 1980) (construing UIM statute that provided coverage "for the protection of persons insured thereunder, who are legally entitled to recover damages .... because of bodily injury ... including death, resulting therefrom...."); *London v. Farmers Ins. Co.,* 63 P.3d 552, 554 (Okla.Civ.App.2002) (interpreting UIM statute providing coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... because of bodily injury ... including death resulting therefrom...."); *Terilli v. Nationwide Mut. Ins. Co.,* 641 A.2d 1321, 1322 (R.I.1994) (interpreting an insurance policy providing UIM coverage that provided compensation for damages "because of bodily injury to an insured" and denying coverage because the injured person was not an insured under the policy); *Allstate Ins. Co. v. Hammonds,* 72 Wash.App. 664, 865 P.2d 560, 563 n. 3 (1994) (construing UIM statute providing coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... because of

bodily injury, death ... resulting therefrom...."); *Ledman v. State Farm Mut. Auto. Ins. Co.*, 230 Wis.2d 56, 601 N.W.2d 312, 316 (App.1999) (interpreting a UIM policy and concluding that "the only reasonable reading is that for a vehicle to be uninsured, it must have caused bodily injury to an insured").

## B. Reasoning of Decisions Permitting Recovery of UIM Benefits

A minority of the jurisdictions addressing this issue have held that a personal representative of a decedent may recover wrongful death benefits under his or her own individual UIM policy. In *Hinners v. Pekin Insurance Co.*, 431 N.W.2d 345 (Iowa 1988), for instance, the Iowa Supreme Court interpreted Iowa's UIM as requiring coverage of persons insured who are legally entitled to recover damages from the owner or operator of an uninsured or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom. The *Hinners* court found that "bodily injury" was not intended to be limited to an injury to the insured person and should also include bodily injury to another person if such injury caused damage to the insured person. 431 N.W.2d at 347. Two dissenters to the *Hinners* opinion disagreed with the majority holding, explaining as follows:

> Additionally, I believe the legislature intended compensation only for injuries incurred by the persons covered under the policy, and not "strangers" to the policy such as the insured's husband in this case. The uninsured motorist statute was enacted to protect the insured as if the tortfeasor had carried liability insurance. *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 909 (Iowa 1973). But all policies have their limits of coverage. I think the legislature enacted section 516A. 1 to compensate insureds for direct physical injuries they personally sustain, not for consequential damages they may incur tangentially via physical injury to another.

431 N.W.2d at 348.

Similarly, in *Gordon v. Atlanta Casualty Co.*, 279 Ga. 148, 611 S.E.2d 24 (2005), the court determined that an insurer must pay damages for the death of an insured's son even when the insured's son is not a covered person under the terms of the insurance policy. "Since the insured in this case is entitled to recover damages for the death of his son against the owner or driver of the uninsured vehicle, he is entitled to recover those damages against his insurer." 611 S.E.2d at 25.

A thorough examination of the minority position was engaged in by the Supreme Judicial Court of Maine in *Butterfield v. Norfolk & Dedham Mutual Fire Insurance Co.*, 860 A.2d 861 (Me.2004). In *Butterfield*, the court observed that Maine had previously interpreted its UIM statute to extend coverage to wrongful death claims caused by an uninsured motorist, even when the deceased was not an insured under the claimant's policy. *See Jack v. Tracy*, 722 A.2d 869 (1999). In *Butterfield*, an insured father had brought an action against his insurer seeking UIM benefits after his daughter, not a named insured in the policy, was killed in an automobile accident. The court held that policy language limiting coverage to injuries sustained by the named insureds violated the UIM statute. 860 A.2d at 865. In acknowledging its own minority position, the *Butterfield* court pointed out that decisions in other states "to allow their citizens to opt out of uninsured motorist coverage suggests a different legislative intent, and makes any comparison with Maine's uninsured motorist law insignificant." 860 A.2d at 864 n. 8.

In a well-reasoned dissenting opinion to *Butterfield*, in which two justices joined, the fallacy in the majority's reasoning was explained and the following conclusion was reached:

> Without the policy provision at issue in this case, Norfolk & Dedham could not accurately address the risk to which it is exposed in the uninsured motorist part of its policy, and on which it could base a reasonable premium. That provision limits the risks arising from injuries to a determinable number of persons, i.e. the named insureds under the policy and resident family members of the named insureds, and protects the insurer from risks that are unascertainable. In my view, the

provision is reasonable, comports with our uninsured motorist statute, and is not contrary to our case law precedent. Accordingly, I respectfully dissent.

860 A.2d at 867.

### C. The Better–Reasoned Approach as the Resolution by this Court

Having examined the legal rationales of other jurisdictions addressing this issue, this Court adopts the reasoning of those courts that deny UIM coverage for the wrongful death of a person who is not an insured under a claimant's UIM policy. The two distinct approaches adopted by courts addressing this issue differ in several significant ways. The public policy considerations, the scope of the wrongful death statutory scheme, and the objectives of the provisions of UIM coverage provide particularly persuasive justifications for the employment of the majority approach. Coverage under a UIM policy is specifically designed to address the bodily injuries sustained by an insured person. This Court cannot advocate the judicial extension of UIM coverage to include family members or others for whom the insured is legally entitled to maintain a wrongful death cause of action. The minority position would permit such coverage, regardless of the absence of any nexus, other than the right to bring a wrongful death action as a legal representative, between the insured person and the accident causing injuries or death to a third person. Adoption of the majority approach gives effect to the statutory pronouncement that even the wrongful death cause of action is derivative in nature, permitting recovery where the wrongful act "is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages...." W. Va.Code § 55–7–5. Under the majority approach, coverage under a UIM policy is triggered when there is bodily injury or death to an insured; it is not triggered when the damages sought to be collected are through a derivative legal claim, such as a wrongful death action, on behalf of a third party decedent who is not an insured.

Adoption of the majority approach is also consistent with both the wrongful death and UIM statutory schemes promulgated by the legislature of this state. The West Virginia wrongful death statute envisions recovery in the legal capacity of a personal representative, rather than individually. Thus, under the approach adopted by this Court herein, the UIM policy maintained by an individual who also occupies the position of personal representative of an estate in a wrongful death action is not available as a component of the recovery for the estate in a wrongful death action where the decedent was not an insured. Further, under the approach adopted by this Court herein, the UIM statute does not compel coverage for persons not named as an insured under the terms of the UIM insurance policy. As the Illinois court succinctly stated in *George*, "[c]laims derivative of bodily injury to someone not insured under the policy are outside the intended scope of uninsured motorist provisions and excluding such claims does not violate the public policy underlying uninsured motorist acts." 261 Ill.Dec. 236, 762 N.E.2d at 1166. Thus, this Court consequently holds that the West Virginia wrongful death statute does not support a cause of action seeking benefits through a claimant's personal UIM insurance policy, where that claimant is acting in his or her legal capacity as a personal representative of an estate and the decedent was not insured under the UIM policy at issue.

Applying these holdings to the case sub judice, although the decedent Ms. Kettlewell was not an insured under the State Farm policy at issue herein, the daughters' role as co-administratrixes permits a wrongful death cause of action to be filed on behalf of the estate. Any claims to be promoted in such action, however, are derivative of the claim of Ms. Kettlewell. Requiring coverage through the UIM policy purchased by a daughter, Ms. Elliott, from State Farm would unreasonably extend coverage beyond the legal scope of the State Farm policy and would be inconsistent with the statutory scope of the wrongful death cause of action. While Ms. Elliott is entitled to pursue a

cause of action under the West Virginia wrongful death statute on behalf of the estate, recovery in such cause of action may not include benefits through Ms. Elliott's personal UIM insurance policy.

Based upon the foregoing, we reverse the decision of the circuit court and remand this matter for entry of summary judgment in favor of State Farm and dismissal of this matter from the circuit court docket.

Reversed and Remanded with Directions.