## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: Tobacco Litigation**

**Ronald Accord, et al.,**
**Plaintiffs Below, Petitioners**

**FILED**

November 3, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 13-1204** (Kanawha County 00-C-5000)

**Phillip Morris USA, Inc.; R.J. Reynolds Tobacco
Company; Brown & Williamson Tobacco Corporation;
and Lorillard Tobacco Company,**
**Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Ronald Accord, et al., by counsel Timothy N. Barber, Kenneth B. McClain, and Scott B. Hall, appeal the October 28, 2013, judgment of the Circuit Court of Kanawha County following a predominantly adverse jury verdict in the first phase of a bifurcated trial on their personal injury claims. Respondents Phillip Morris USA, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, and Lorillard Tobacco Company, by counsel W. Henry Jernigan, Jr., David B. Thompson, Susan M. Robinson, and Sarah A. Martin, filed a response. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's October 28, 2013, "Judgment on Phase I" is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Background

This appeal arises out of hundreds of personal injury actions filed between 1998 and 2001, in which petitioners alleged that they were harmed as a result of smoking cigarettes manufactured by respondents. The cases were referred to the Mass Litigation Panel for coordination and trial, and thereafter, this Court appointed the Honorable Arthur M. Recht to preside over the matter. In January of 2000, Judge Recht issued a "Case Management Order/Trial Plan" bifurcating the matter into two phases.[1] Phase I, which is the subject of the current appeal,

---

[1] Respondents objected to the trial plan on several grounds, including: (1) that jury confusion would result from consolidation of so many widely-varying claims; (2) that it would violate due process to split interrelated issues between different trial phases; (3) that respondents

1

involved "general liability issues common to all defendants including, if appropriate, defective product theory; negligence theory; warranty theory; and any other theory supported by pretrial development." Phase I also involved "entitlement to punitive damages."[2] Phase II, which has yet to occur, will involve the "individual claims of the plaintiffs whose cases have been consolidated." In Phase II, "[e]ither separate individual juries, judge or judges will independently address issues unique to each plaintiff's compensatory damages and any other individual issues in reasonably sized trial groups or on an individual basis."

Phase I proceeded to a jury trial beginning on April 13, 2013, and ending with a verdict on May 13, 2013.[3] The following claims were submitted to the jury: (1) product defect, defective design; (2) product defect, failure to warn before July 1, 1969; (3) product defect, failure to instruct for "ventilated filter cigarettes" between 1964 and July 1, 1969; (4) negligent design, testing, or manufacture; (5) breach of express warranty; (6) fraudulent concealment before July 1, 1969; and (7) entitlement to punitive damages. The jury found for petitioners on only one of their claims – that "all ventilated filter cigarettes manufactured and sold by Defendants between 1964 and July 1, 1969[,] were defective because of a failure to instruct." The jury found for respondents on the remaining six claims. The circuit court denied the parties' post-trial motions and entered Judgment on October 28, 2013.[4] This appeal followed.

---

would be disadvantaged through the deferral of the majority of their critical evidence to individual trials, such as evidence related to causation, comparative fault, and assumption of risk; and (4) that, in Phase I, respondents would be forced to litigate against a "fictional composite plaintiff" without any evidence that the alleged misconduct affected any single actual plaintiff, much less all of the them. Respondents note that despite prevailing on virtually all issues in Phase I, they preserve their objections to being compelled to participate in any such composite proceeding.

[2] Following the United States Supreme Court's decision in *State Farm Mutual Automobile Insurance Company v. Campbell,* 538 U.S. 408 (2003), the circuit court vacated its trial plan with respect to punitive damages in Phase I, reasoning that consideration of punitive liability would violate due process inasmuch as the misconduct at issue would have no connection to many of the plaintiffs. The circuit court certified the issue to this Court, and we held that due process did not "per se preclude[]" the trial plan as originally crafted. *In re Tobacco Litigation,* 218 W.Va. 301, 304, 624 S.E.2d 738, 741 (2005). On remand, the circuit court reinstated its trial plan.

[3] Three previous trials in Phase I resulted in mistrials. The first two mistrials were the result of the inability to seat the required number of jurors. The third mistrial, according to petitioners, was the result of the circuit court's mid-trial reversal of its previous decision regarding preemption of petitioners' "use defect" claims. See discussion below in section IV.

[4] The Judgment Order on Phase I expressly provided, pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure, that "there is no just reason for a delay in permitting any appellate rights of the parties to be perfected as to the verdict rendered and this order[;] therefore, such rights attach to this order."

**Discussion**

On appeal, petitioners raise six assignments of error. We address each of their alleged errors individually and include in our discussion any relevant factual background necessary for the disposition of the issues.

**I.**

First, petitioners argue that the circuit court gave instructions to the jury that misstated the legal standard for strict liability and improperly submitted affirmative defenses as verdict-directing instructions without a recitation of respondents' burden of proof. This Court reviews *de novo* "whether a jury was properly instructed." Syl. Pt. 1, in part, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996). However, "the formulation and giving of jury instructions" are reviewed under an abuse of discretion standard. *AIG Domestic Claims, Inc. v. Hess Oil Co., Inc.* 232 W.Va. 145, 151, 751 S.E.2d 31, 37 (2013). *See also* Syl. Pt. 4, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995) ("A trial court . . . has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion."). In addition, an erroneous instruction does not warrant a new trial unless the complaining party was prejudiced by such instruction. *See* Syl. Pt. 2, *Hollen v. Linger,* 151 W.Va. 255, 151 S.E.2d 330 (1966).

Petitioners contend that, over their objection, the circuit court gave instructions to the jury that deviated from the established standard for strict liability in tort, as established in Syllabus Point 4 of *Morningstar v. Black and Decker Manufacturing Company*, 162 W.Va. 857, 253 S.E.2d 666 (1979):

> In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.

Instead, petitioners argue, the circuit court's instructions relied upon the risk/utility analysis[5] and the Restatement (Second) of Tort's definition of "unreasonably dangerous."

---

[5] The risk/utility analysis is a seven-factor test for determining if a product is defective. It was adopted by the State of New Jersey in *Cepeda v. Cumberland Engineering Co., Inc*., 76 N.J. 152, 174, 386 A.2d 816, 826-27 (1978), and recognized by this Court in *Morningstar*. The factors are as follows:

> (1) The usefulness and desirability of the product its utility to the user and to the public as a whole; (2) The safety aspects of the product the likelihood that it will cause injury, and the probable seriousness of the injury; (3) The availability of a substitute product which would meet the same need and not be as unsafe; (4) The manufacturer's ability to eliminate the unsafe character of the product without

3

Petitioners argue that the instructions allowed the jury to improperly consider "whether there was a feasible alternative design for that particular product that was technologically and economically feasible, that would be an acceptable replacement for the existing product and that would have rendered the product reasonably safe" and whether defective products "nevertheless, may be useful and desirable." Petitioners argue that such language in the instructions runs contrary to *Morningstar,* which they assert rejected the risk/utility analysis in favor of the "not reasonably safe" definition.

Upon our review, we find no error with respect to the circuit court's instructions to the jury on the standard for strict liability. As respondents correctly point out, the circuit court instructed the jury on Syllabus Point 4 of *Morningstar* six times with respect to each of petitioners' strict liability claims. Moreover, the record reflects that the circuit court did not replace the "unreasonably safe" standard with a competing one; rather, it used the "risk/utility analysis" and Restatement (Second) of Tort to *explain* the standard.[6] As this Court explained in *Church v. Wesson,* 182 W.Va. 37, 40, 385 S.E. 393, 396 (1989), "[t]he question [is whether] the manufacturer use[d] reasonable care in designing and manufacturing the product at the time it was marketed, not whether it could possibly have been made better or more safe, or later has been made better or more safe." We believe the circuit court's instructions to the jury in this case were consistent with this standard.

As part of their first assignment of error, petitioners also argue that the circuit court erred with respect to the affirmative defense instructions because the instructions given did not include language regarding respondents' burden of proof, as required by *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). In their brief to this Court, petitioners state that the circuit court instructed the jury on the following affirmative defenses: (1) assumption of risk; (2) federal preemption; (3) proximate cause based on smoker's choice; (4) compliance with federal or state statutes or regulations; (5) First Amendment rights; (6) the Noerr-Pennington doctrine; (7) due process rights; and (8) ratification.

As for petitioners' argument regarding affirmative defenses,[7] respondent is correct that the circuit court did not instruct the jury to make any findings with respect to affirmative

---

impairing its usefulness or making it too expensive to maintain its utility; (5) The user's ability to avoid danger by the exercise of care in the use of the product; (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

(Internal citations omitted).

[6] Nevertheless, contrary to petitioners' argument, *Morningstar* did not reject the risk/utility analysis. To the contrary, we expressly recognized that it has a place in a tort liability case. 162 W.Va. at 887, 253 S.E.2d at 682.

4

defenses; therefore, no instruction on their burden of proof was necessary. Of the alleged affirmative defenses listed by petitioners in their brief, only assumption of risk is an actual affirmative defense, and the circuit court gave no such instruction. The other concepts argued by petitioners are not affirmative defenses – they are either factors that the jury could consider, or limitations on what it could consider, in determining whether petitioners met their burden on their own claims.[8] Accordingly, we must reject petitioners' first assignment of error.

## II.

Petitioners' second assignment of error is that the circuit court erred in dismissing hundreds of plaintiffs' complaints with prejudice because these plaintiffs failed to provide a deposition or sufficient baseline information during their lifetimes. Petitioners state that during the fifteen-year pendency of this case, the circuit court dismissed over six-hundred actions with prejudice because, in the majority of instances, the individual plaintiff died without being deposed. Petitioners state that the remaining dismissals were based on the alleged failure of a plaintiff to provide adequate baseline factual and medical information related to his/her action by March 1, 2000, as required by the Case Management Order/Trial Plan.

Respondents point out that petitioners obtained a stay of discovery pending the outcome of Phase I. In the event a plaintiff died before giving a deposition, the circuit court required that all plaintiffs provide respondents with certain baseline factual and medical information about

---

[7] In their brief to this Court, respondents argue that petitioners waived this argument because their written objection to the circuit court's charge stated, generally, that any instruction given in the context of an affirmative defense must include the defendant's burden of proof, but failed to identify a specific instruction that they believed constituted an affirmative defense instruction. Because we address the merits of petitioners' argument, we need not decide whether this argument was waived.

[8] As noted by respondents, petitioners do not challenge any specific "affirmative defenses" instructions. Nevertheless, we note that the jury was instructed (1) to disregard respondents' conduct after July 1, 1969 in deciding petitioners' use of defect and concealment claims (presumably what petitioners argue is the affirmative defense of "federal preemption"); (2) that "reasons for smoking are not an issue in this phase of the trial" (presumably what petitioners mean by "proximate causation based on smoker's choice"); (3) that the jury could "consider whether or not [respondents] complied with applicable federal or state statutes or regulations" in deciding whether they "failed to exercise reasonable care" ("compliance with federal or state statutes or regulations"); (4) that the jury could "not impose liability on a Defendant" for "[e]xpressing a particular view in scientific debate" (presumably what petitioners mean by "First Amendment Rights"), for its "lobbying efforts" ("the Noerr-Pennington Doctrine"), or for "defend[ing] against litigation" ("due process rights"); and (5) that the jury could not subject respondents to "punitive damages based on the wrongful conduct of an employee unless" management "ratified [that] conduct" ("ratification"). Petitioners do not allege that these instructions were incorrect statements of law. Rather, they allege that there should have been instructions on the respondents' burdens of proof. No such instructions were proposed, nor were they required.

5

his/her smoking history prior to March 1, 2000, so as to not prejudice the respondents. The Case Management Order/Trial Plan went on to allow immediate discovery for any plaintiff who indicated that he or she may be unavailable to testify at a later date. In 2002, respondents learned that many plaintiffs had died without providing a deposition, and many others failed to provide the required baseline information by the deadline. The circuit court warned petitioners' counsel that claims would be dismissed if the Case Management Order/Trial Plan was not followed. At that point, some plaintiffs indicated that they suffered from illnesses and submitted to depositions. However, many others were not deposed before their deaths, and the circuit court dismissed those claims with prejudice. None of the dismissals were appealed until now.[9]

Petitioners argue that by dismissing these complaints with prejudice, the circuit court ignored that the wrongful death statute, West Virginia Code § 55-7-8, creates a separate and distinct cause of action available to the beneficiaries of a decedent; that the circuit court dismissed these actions based on the inaction of deceased personal injury plaintiffs during their lifetime; that the wrongful death statute is to be liberally construed to ensure that its objective and spirit are not thwarted by technical application; and that because the inaction occurred before the accrual of the plaintiffs' wrongful death action, i.e., the plaintiffs' death, dismissal was in error.

Additionally, petitioners argue that in almost all of the dismissals, the circuit court failed to give notice, hold a hearing, or allow the respective plaintiffs to brief the factual or legal issues, in violation of Rule 41(b) of the West Virginia Rules of Civil Procedure.[10] Petitioners contend that the circuit court allowed respondents to submit proposed orders calling for the dismissals of multiple plaintiffs, and then entered the order within ten to fourteen days, noting "no objection received."

---

[9] In addition to responding to the merits of petitioners' argument, respondents argue that the appeal of the dismissed actions is untimely. Respondents argue that each dismissal order was a final, appealable order in the individual case in which it was entered. However, at the conclusion of the Phase I trial, the circuit court agreed with petitioners' argument that the prior dismissals were partial adjudications in a single, consolidated case, and, thus, not appealable until the circuit court certified them for appeal pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure, which did not occur until the October 28, 2013, Judgment Order, the order currently on appeal. Respondents contend that the circuit court's Rule 54(b) certification has no effect because the dismissals were final as to the claims of the particular plaintiff subject to the order. Given that we address and dispose of petitioners' argument on its merits, we need not address respondents' timeliness argument.

[10] Rule 41(b) provides, in pertinent part, as follows:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

Upon our review, we reject petitioners' argument. Importantly, it was petitioners who requested the inclusion of the requirements in the Case Management Order that plaintiffs submit to immediate deposition or submit baseline medical information by March 1, 2000. They requested that this language be added so that they could obtain a stay of discovery. Petitioners cannot now complain that the court enforced the requirements that they themselves requested. *See* Syl. Pt. 7, *State v. Mills,* 211 W.Va. 532, 566 S.E.2d 891 (2002) ("A judgment will not be reversed for any error in the record introduced by or invited by the party asking for the reversal." (citations omitted)).

Moreover, we disagree with petitioners' characterization of the dismissals as dismissing "wrongful death claims." Rather, the circuit court enforced its Case Management Order/Trial Plan with respect to discovery requirements and dismissed the non-complying plaintiffs' own personal injury claims. Sanctions for discovery violations are reviewed for an abuse of discretion. *See* Syl. Pt. 1, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995). Admittedly, the dismissal had the *effect* of barring the wrongful death claim as it is derivative of the personal injury claim. *See Strum v. Swanson,* 221 W.Va. 205, 216, 653 S.E.2d 667, 678 (2007) ("[T]he wrongful death cause of action is derivative in nature.") However, because the circuit court did not err in dismissing the personal injury claims through its enforcement of the Case Management Order/Trial Plan, there is no error with respect to the effect of those dismissals on potential wrongful death claims.[11]

As to petitioners' argument that the dismissals violated due process, the record reflects that the circuit court entered each dismissal order subsequent to properly-filed motions, to which petitioners failed to object. There is simply no basis to find a due process violation. As for petitioners' allegation that the dismissals violated Rule 41(b), we note that respondents did not seek dismissal under that rule; rather, they moved for dismissal under Rule 37(b)(2)(C) for noncompliance with discovery orders.[12] Therefore, there is no basis to reverse the dismissal orders about which petitioners complain.

---

[11] Stated another way, petitioners' complaint is with the operation of the wrongful death statute, not the circuit court.

[12] Rule 37(b)(2)(C) of the West Virginia Rules of Civil Procedure provides as follows:

(2) Sanctions by court in which action is pending. - If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to supplement as provided for under Rule 26(e), or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following: . . .

7

## III.

Next, petitioners argue that the circuit court erred with respect to its instruction on punitive damages.[13] Specifically, petitioners argue that the circuit court erred in requiring a standard of proof for punitive damages by "clear and convincing" evidence, rather than proof by a "preponderance of the evidence."[14] Respondents dispute petitioners' assertion that "preponderance of the evidence" is the clear standard under our case law; argue that there is a lack of controlling law on the issue; and point out that the circuit court followed the vast majority of states that use some heightened standard of proof for punitive damages. Respondents state that, of the thirty-four jurisdictions that have addressed the issue, twenty-four have adopted the "clear and convincing" or "beyond reasonable doubt" standard by statute, and eight jurisdictions have done so by judicial opinion. Respondents argue that the circuit court did not err in giving a "clear and convincing" instruction.

We can easily dispose of petitioners' third assignment of error without delving into the issue of the proper standard of proof for a punitive damages instruction because any potential error was clearly harmless. As noted above, petitioners must demonstrate that they were prejudiced by the alleged instructional error. *See Hollen v. Linger,* 151 W.Va. 255, 151 S.E.2d 330 (1966). In the present case, petitioners could only have been harmed if the instruction prevented them from obtaining punitive damages on the single, narrow claim upon which they prevailed -- failure to instruct for ventilated filtered cigarettes between 1964 and 1969. However, as respondents correctly note, prior to trial, petitioners advised the circuit court that they sought punitive damages on only one type of respondents' conduct – *fraudulent concealment* of known hazards of smoking. Thus, given that petitioners did not prevail at trial on this issue, they were not entitled to punitive damages. Additionally, the evidence related to petitioners' failure to instruct between 1964 and 1969 claim was not sufficient to establish respondents intentionally or maliciously withheld information about those cigarettes. *See* Syl. Pt. 4, *Mayer v. Frobe,* 40 W.Va. 246, 22 S.E. 58 (1895) ("In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.") At trial, petitioners introduced no evidence that any respondent intentionally withheld any specific instructions with respect to cigarettes manufactured between 1964 and 1969. Accordingly, any

---

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

[13] We employ the same standard of review noted in our discussion of petitioners' first assignment of error, which also challenged the circuit court's jury instructions.

[14] Petitioners state that the circuit court rejected proposed instructions submitted by both parties that identified the standard of proof as a "preponderance of the evidence." The circuit court opted for an instruction using the "clear and convincing" standard, stating, "I just think that the time has come when [clear and convincing] will be the standard."

potential error in the circuit court's punitive damages instruction was harmless and does not warrant reversal of the jury's verdict in this case.

## IV.

In their fourth assignment of error, petitioners argue that the circuit court erred in ruling that their post-1969 claims for fraudulent concealment, statutory fraud, and strict liability use-defect were preempted by federal law, namely, the 1969 Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 United States Code §§ 1331 to -1341. Petitioners argue that, during the pendency of the case, the circuit court's opinion on whether petitioners' state law tort claims were preempted "wavered between extremes." They state that in July of 2001, the circuit court ruled that petitioners' fraudulent concealment claim was preempted. In 2003, the circuit court reversed that decision and held that petitioners' post-1969 fraudulent concealment claims were not preempted. Respondents sought to present the preemption issue to this Court as a certified question, which this Court refused. Petitioners state that they spent the next three to four years preparing for trial, as if the claim was not preempted. Then, in 2006, the circuit court revisited the issue and reversed its ruling again based on certain discovery responses provided by petitioners in 2001. Ultimately, the circuit court ruled that petitioners' fraudulent concealment claim was preempted.

Petitioners similarly argue that the circuit court's opinion on whether petitioners' strict liability use-defect claim was preempted wavered as well, and was the basis of the third mistrial in the case in 2011. Four weeks into the Phase I trial in 2011, the circuit court reversed its previous ruling and ruled that petitioners' claims were not preempted. Petitioners state that the parties spent the next seventeen months preparing for trial scheduled for April of 2013. However, seven days before the start of the trial, the circuit court reversed its opinion, ruled that the claims were preempted, and dismissed petitioners' post-1969 use-defect claims. Further, the circuit court refused petitioners' requests for a stay or continuance to prepare for what petitioners contend was a completely different trial than that for which they had planned.

As for the substance of petitioners' argument against preemption, they assert that the circuit court's decisions are contrary to *Cipollone v. Liggett,* 505 U.S. 504 (1992), in which petitioners assert the United States Supreme Court ruled that the FCLAA does not preempt strict liability use-defect and fraudulent concealment claims in tobacco personal injury cases. Petitioners also cite to *Altria Group, Inc. v. Good,* 555 U.S. 70 (2008), arguing that the Court held that statutory fraud claims are not expressly preempted by the FCLAA. Petitioners ask this Court to award them a new trial with respect to the claims they contend were erroneously dismissed as preempted.

"Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). Based on our review of the record, we do not believe the circuit court erred in concluding that certain of petitioners' claims were preempted by the FCLAA. First, however, with respect to petitioners' statutory fraud claim, we do not believe the record supports petitioners' assertion that the circuit court made such a ruling. Rather, the record reveals that petitioners abandoned that claim. In 2001,

petitioners had pending claims alleging statutory and common law fraud. However, in response to respondents' motion requesting clarification of the claims to be tried, petitioners listed "fraudulent concealment," but not statutory fraud. The circuit court subsequently entered an order memorializing the dismissal of all claims not listed, including "consumer protection liability," to which petitioners failed to object. Therefore, we find no error in the dismissal of petitioners' statutory fraud claim.

As for petitioners' post-1969 use-defect (failure to warn and failure to instruct) and fraudulent concealment claims, we conclude that they were properly dismissed as preempted. Congress passed the FCLAA in 1965, which in pertinent part, required warning labels on cigarettes. In 1969, Congress amended the FCLAA to include the following preemption provision: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter."

15 U.S.C. § 1334(b). "Together, the labeling requirement and pre-emption provisions express Congress' determination that the prescribed federal warnings are both necessary and sufficient to achieve its purpose of informing the public of the health consequences of smoking." *Altria Group, Inc.*, 555 U.S. at 79.

Petitioners claimed that respondents should have promulgated warnings and instructions for the use of cigarettes, and otherwise disclosed allegedly concealed information, "through the same channels of communication they used to market their defective tobacco to the public." After 1969, such a claim is clearly preempted. Contrary to petitioners' argument, although *Cipollone* holds that manufacturing-defect claims are not preempted, it does not hold that *use*-defect claims, as alleged here, escape preemption. 505 U.S. at 524. Further, with regard to petitioners' fraudulent concealment claim, *Cipollone* holds that only a narrow subset of claims escape preemption -- those that allege concealment in some channel *other than* advertising or promotion. *Id.* at 528. In the present case, petitioners did not allege that respondents should have communicated warnings and instructions outside of advertising and promotion; they alleged the opposite. Therefore, we see no error in the circuit court's decision to dismiss petitioners' use-defect and fraudulent concealment claims as preempted.

Lastly, we address petitioners' assertion that the circuit court's "last-minute" change to its preemption ruling "substantially affected [their] entire trial strategy." We believe petitioners' argument is a gross exaggeration and belies the nature of litigation. The record reflects that the parties agreed to a briefing schedule that called for respondents' motion to dismiss to be filed six weeks before trial. At the hearing on that motion, almost three weeks before opening statements, the circuit court announced that it was inclined to grant respondents' motion and find the subject claims preempted. Although this change limited petitioners' case, it did not require any new or additional evidence or witnesses. We, therefore, conclude that the petitioners' are entitled to relief as a result of the timing of this ruling.

## V.

Petitioners' fifth assignment of error is that the circuit court erred by submitting an instruction that forced the jury to find "all cigarettes" manufactured by respondents were equally unsafe.[15] Petitioners state that during the trial, all of the parties placed cigarettes into general categories (e.g., unfiltered, filtered, low-tar, novel design) and distinguished the categories by their risk of smoking-related disease. Petitioners state that respondents presented evidence that low-tar and novel design cigarettes were safer designs in that they carried a reduced risk of disease compared to the other categories. However, petitioners argue that, despite this categorization, the circuit court gave an instruction that forced the jury to find that "all cigarettes" manufactured by respondents were equally unsafe. Petitioners argue that this instruction was contrary to the evidence in the case and prejudiced them, as evidenced by the fact that the only claim upon which the jury found in their favor was their claim related to a specific type of cigarette – ventilated filtered cigarettes.

Upon our review, we agree with respondents that petitioners mischaracterize the instructions actually given by the circuit court. Contrary to petitioners' assertion, the instruction did not require that the jury find that all of respondents' cigarettes were "equally unsafe." Rather, the instruction required the jury to find that "all cigarettes" were "not reasonably safe" in order to impose liability. Thus, if the jury believed that certain cigarettes were safer than others, but that respondents' products were, nevertheless, "not reasonably safe," they could have returned a verdict in petitioners' favor. We find no error with respect to petitioners' fifth assignment of error.

## VI.

In their final assignment of error, petitioners argue that the circuit court erred by preventing them from questioning the jury venire panel about an individual's "personal choice" to smoke. Petitioners contend that the circuit court was clearly aware that this was a core issue in the trial, as evidenced by two previous mistrials that resulted from potential jurors expressing an intrinsic bias against smokers based on "personal choice." Petitioners allege that by prohibiting inquiry into "personal choice," they could not determine if potential jurors believed smoking was a personal choice or an addiction that prevents choice. Therefore, petitioners state that there can be no assurance that jury in the present case was impartial.

Voir dire questioning "is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused." Syl. Pt. 2, in part, *State v. Mayle,* 178 W.Va. 26, 357 S.E.2d 219 (1987) (citations omitted). The record does not support the petitioners' contention that the circuit court prevented their "personal choice" inquiry. As respondents point out, petitioners questioned every person who served on the jury about "choice" and "responsibility," and even struck for cause at least one potential juror who indicated that he could not put aside his views on a person's choice to smoke. Petitioners fail to identify a single question that they sought to ask but were prohibited from asking. The circuit court rightfully advised potential jurors during voir dire and the jury in its charge that "personal choice" and

---

[15] *See* note 12, *supra,* regarding our standard of review for alleged instructional error.

"individual responsibility" of the plaintiffs were not issues to be considered, as Phase I focused solely on respondents' conduct. Therefore, we reject petitioners' final assignment of error because we find no abuse of discretion by the circuit court in its handling of jury selection.

## Conclusion

For the foregoing reasons, we affirm the "Judgment on Phase I" entered by the Circuit Court of Kanawha County on October 28, 2013.

Affirmed.

**ISSUED:** November 3, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis
Justice Margaret L. Workman

12