423 S.E.2d 922

**Judith STARR, Plaintiff Below, Appellee,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, a Corporation, Defendant Below, Appellant.**

**No. 21170.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1992.

Decided Nov. 13, 1992.

R. Carter Elkins, Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for appellant.

Menis E. Ketchum, John H. Bicknell, Greene, Ketchum, Bailey & Tweel, Huntington, for appellee.

MILLER, Justice:

This is an appeal by the defendant below, State Farm Fire and Casualty Co. (State Farm), from an order of the Circuit Court of Cabell County, entered December 4, 1991, which held that the plaintiff below, Judith Starr, a guest passenger in a vehicle owned by William Cline, was entitled to recover underinsured motorist benefits pursuant to a motor vehicle insurance policy covering another vehicle owned by Mr. Cline which was not involved in the accident in which the plaintiff was injured. We conclude that the plaintiff cannot recover, and we reverse the judgment of the circuit court.

I.

On October 5, 1990, the plaintiff was a guest passenger in a 1990 Toyota Celica, owned by William Cline and driven by Sherry Cline, which was struck by a vehicle driven by Virgil Cantrell, Jr. As a result of the accident, the plaintiff was injured. It was undisputed for purposes of this appeal that Mr. Cantrell was at fault.

Mr. Cantrell's liability insurer paid the plaintiff $20,000, the limits of insurance available to her under Mr. Cantrell's liability insurance policy. The plaintiff also recovered $40,000 in underinsured motorist benefits under two automobile insurance

policies she had purchased from Allstate Insurance Company (Allstate).[1] In addition, the plaintiff received $20,000 in underinsured motorist benefits under the State Farm policy covering the Toyota in which she was a passenger.

Mr. Cline also owned a 1984 Ford Ranger which was not involved in the accident and which was covered by a separate State Farm insurance policy (the Ford policy) providing up to $50,000 in underinsured motorist benefits. The plaintiff instituted a declaratory judgment action in the Circuit Court of Cabell County asserting that she was entitled to recover underinsured motorist benefits under the Ford policy. The circuit court granted the plaintiff's motion for summary judgment and, by order entered December 4, 1991, ruled that the plaintiff was an "insured" under the Ford policy and was, therefore, entitled to underinsured benefits under that policy.

## II.

Initially, we note that the parties suggest that the lower court's ruling was erroneous when considered in light of this Court's recent decision in *Alexander v. State Automobile Mutual Insurance Co.*, 187 W.Va. 72, 415 S.E.2d 618 (1992). The plaintiff in *Alexander* was injured in an automobile accident while a guest passenger in a vehicle owned by one of her sisters, Mrs. Lowther, and driven by another, Mrs. Elbon. Although another car was involved in the accident, it appeared that Mrs. Elbon was at fault. The plaintiff recovered medical and bodily injury liability benefits from Mrs. Lowther's liability insurance carrier, State Automobile Mutual Insurance Company (State Auto). The plaintiff then made a demand upon State Auto for underinsured motorist benefits under the same policy.

At issue in *Alexander* was whether the plaintiff's injuries were caused by an "underinsured motor vehicle." The terms of Mrs. Lowther's policy excluded from the definition of underinsured motor vehicle any vehicle owned by the policyholder. We

considered the nature of underinsured motorist coverage, stating:

"[U]nderinsured motorist coverage is intended to compensate parties for injuries caused by other motorists who are underinsured. As long as the insured owns both the underinsured motorist policy in question and the vehicle, then the insured's vehicle will not be considered an underinsured motor vehicle for purposes of the insured's own underinsured motorist coverage. Because an underinsured motorist policy is intended to benefit the person who bought the policy, we conclude that underinsured motorist coverage is not available to a guest passenger, unless the statute or policy language specifically provides for such coverage." 187 W.Va. at 79, 415 S.E.2d at 625. (Footnote omitted; citations omitted).

After reviewing the relevant provisions of our uninsured/underinsured motorist coverage statute, W.Va.Code, 33–6–31 (1988), we concluded that the policy's exclusion was not in conflict with the statute, and we held that the plaintiff was, therefore, not entitled to coverage.

It is important to note that in *Alexander*, we used the term "insured" in the general sense to refer to the owner of the vehicle to which the policy applies. The focus in *Alexander* was on the policy language which excluded from the definition of an uninsured or underinsured vehicle the insured's own vehicle. We concluded that underinsured motorist coverage was not designed to operate where the insured vehicle created the injury for which this coverage was sought. Such injuries are covered under the liability side of the policy.

Here, the plaintiff is not attempting to recover both liability and underinsured motorist benefits from the owner of the Toyota, the vehicle in which she was a passenger at the time of the accident. It is apparently uncontested that the plaintiff was injured as a result of Mr. Cantrell's negligent operation of his motor vehicle. Mr. Cline's vehicle was not at fault. Thus, unlike *Alexander*, the plaintiff's injuries were not caused by the use of the motor

**1.** *See* note 5, *infra.*

vehicle in which she was riding. Consequently, *Alexander* is not controlling in this case.

### III.

The principal issue in this case turns on the definition of the term "insured" in the underinsured motorist provision of the Ford policy. State Farm argues that the plaintiff is not entitled to "stack"[2] the Ford underinsured motorist coverage on top of the Toyota coverage for two reasons: (1) the plaintiff does not qualify as an "insured" under the Ford policy and is, therefore, not entitled to coverage as an underinsured motorist; and (2) the language of the policy defining the term "insured" is consistent with the definition of that term contained in W.Va.Code, 33–6–31(c).

### A.

We begin with a discussion of the policy language and the scope of the coverage under the uninsured and underinsured motorist provision. The Ford policy provides, in pertinent part:

"**Who Is an Insured**

*Insured*—means the **person** or **persons** covered by uninsured motor vehicle or underinsured motor vehicle coverage. This is:

1. *you;*
2. *your spouse;*
3. any *relative;* and
4. any other **person** while *occupying:*
   a. with the consent of *you* or *your spouse:*
   (1) *your car*[.]"

(Emphasis in original).

The policy defines "your car" as "the **car** or the vehicle described on the declarations page."

■ It is generally held that uninsured/underinsured motorist provisions of an automobile insurance policy which separately define coverage for the owner, spouse, and any relative living in the owner's household as one group, and for other persons while occupying the covered vehicle with the consent of the owner or his or her spouse as another group, create two distinct classes of covered individuals. *E.g., Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229 (Fla.1971); *Ohio Casualty Ins. Co. v. Stanfield,* 581 S.W.2d 555 (Ky.1979); *Beeny v. California State Auto. Ass'n Inter–Ins. Bureau,* 104 Nev. 1, 752 P.2d 756 (1988); *Utica Mut. Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984). *See generally* 1 A. Widiss, *Uninsured & Underinsured Motorist Insurance* § 4.1 (1992); 3 A. Widiss, *Uninsured & Underinsured Motorist Insurance* § 33.1 (1992); 7 Am.Jur.2d *Automobile Insurance* § 311 (1980 & Supp.1992). We find this to be a correct statement of the law.

There is no disagreement between the parties that the definition of insured in the Ford policy creates two categories of insureds. The first category consists of the policyholder (*"you"*), the spouse (*"your spouse"*), and any *"relative."*[3] The second category consists of "any other **person**" who is (1) occupying the car described in the policy (2) with the consent of the policyholder or his or her spouse.

■ This difference in the policy language alters the nature of the protection afforded each class of insured under the

**2.** In *Lopez v. Foundation Reserve Insurance Co.,* 98 N.M. 166, 168–69, 646 P.2d 1230, 1232–33 (1982), the New Mexico court offered this definition of "stacking":

"The term 'stacking' refers to an insured's attempted recovery of damages under more than one policy, endorsement or coverage 'by placing one policy, endorsement, or coverage, etc. upon another and recovering from each in succession until either all of his damages are satisfied or until the total limits of all policies, endorsements, coverages, etc. are ex-

hausted, even though the insured has not been fully indemnified.' " (Citations omitted). *See generally* 12 *Couch On Insurance 2d* § 45.-628 (1981 & Supp.1992); 7 Am.Jur.2d *Automobile Insurance* §§ 292, 326 (1980 & Supp.1992).

**3.** The Ford policy defines "you" or "your" as "the named insured ... shown on the declarations page" of the policy. The policy also defines "spouse" as *"your* husband or wife while living with *you,"* and "relative" as "a **person** related to *you* or *your spouse* by blood, marriage or adoption who lives with *you."*

policyholder's underinsured motorist coverage. Those in the first category, or "Class One" insureds, are afforded relatively broad coverage and are protected when injured by an underinsured motorist regardless of whether they were occupying a covered motor vehicle at the time. The coverage of those in the second category, or "Class Two" insureds, is tied to their use or occupancy of a covered motor vehicle at the time of the injury.[4] *E.g., Sturdy v. Allied Mut. Ins. Co.,* 203 Kan. 783, 457 P.2d 34 (1969); *Ohio Casualty Ins. Co. v. Stanfield, supra; Beeny v. California State Auto. Ass'n Inter–Ins. Bureau, supra. See generally* 1 A. Widiss, *supra* §§ 4.2, 5.1 *et seq.;* 3 A. Widiss, *supra* §§ 33.2, 33.7, 33.8; 7 Am.Jur.2d *Automobile Insurance* §§ 311–312, 314–315.

State Farm points out, and we agree, that broader coverage is afforded a Class One insured in the sense that the uninsured or underinsured motorist coverage on other vehicles owned by the insured can be stacked even though the Class One insured was not occupying the other vehicles at the time of the accident.[5] This rule is based on the reasonable expectation of the parties. As the court explained in *Travelers Insurance Co. v. Pac.,* 337 So.2d 397, 398 (Fla. App.1976), *cert. denied,* 351 So.2d 407 (Fla. 1977):

> "Stacking is derived from the presumption that when the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere. But there is no reason to

apply this result to a guest or employee injured in an insured vehicle. That person has no relationship with any other insured vehicle and the coverage on the others should not inure to his benefit." (Footnote omitted).

*Accord Babcock v. Adkins,* 695 P.2d 1340, 1342 (Okla.1984) ("The purpose for allowing a named insured the benefit of all policies for which he has paid premiums is to provide a fulfillment of the contractual expectations that that party had when purchasing those policies[.]"). *See also Lambert v. Liberty Mut. Ins. Co.,* 331 So.2d 260 (Ala.1976); *Ohio Casualty Ins. Co. v. Stanfield, supra; Doerner v. State Farm Mut. Auto. Ins. Co.,* 337 N.W.2d 394 (Minn. 1983).

As to a Class Two insured, the vast majority of courts which have considered similar policy language have concluded that a person who is injured while occupying a covered vehicle with the permission of the named insured or his or her spouse is entitled to recover uninsured or underinsured motorist benefits under the named insured's coverage only on the occupied vehicle involved in the accident and may not stack the named insured's uninsured/underinsured motorist coverage on another vehicle. *E.g., Burke v. Aid Ins. Co.,* 487 F.Supp. 831 (D.Kan.1980) (applying Kansas law); *Holloway v. Nationwide Mut. Ins. Co.,* 376 So.2d 690 (Ala.1979); *American States Ins. Co. v. Kelley,* 446 So.2d 1085 (Fla.App.), *review denied,* 456 So.2d 1181 (Fla.1984); *Ohio Casualty Ins. Co. v. Stanfield, supra; Auto–Owners Ins. Co. v. Traviss,* 72 Mich.App. 66, 248 N.W.2d 673 (1976); *Doerner v. State Farm Mut.*

---

**4.** A third category of insureds has also been recognized. These "Class Three" insureds typically include those who have suffered loss of consortium or grief and mental anguish occasioned by the injury or death of a Class One or Class Two insured. *See Utica Mut. Ins. Co. v. Contrisciane, supra; Thompson v. Grange Ins. Ass'n,* 34 Wash.App. 151, 660 P.2d 307, *review denied,* 99 Wash.2d 1011 (1983). *See generally* 1 A. Widiss, *supra* § 4.1; 3 A. Widiss, *supra* §§ 33.1, 33.9.

**5.** State Farm makes this statement in its brief as to Ms. Starr's stacking of her own underinsured motor vehicle policies with Allstate:

"This [distinction between Class One and Class Two insureds] did not preclude Ms. Starr from recovering stacked underinsured motorist coverage benefits from her own policies of underinsured motorist coverage with Allstate, as she is a Class 1 insured under her personal Allstate policies and thus clearly entitled to the stacked underinsured motorist coverage, pursuant to West Virginia Code § 33–6–31(c) and *[State Automobile Mutual Insurance Co. v.] Youler,* [183 W.Va. 556, 396 S.E.2d 737 (1990) ]."

*Auto. Ins. Co., supra; Hines v. Government Employees Ins. Co.,* 656 S.W.2d 262 (Mo.1983); *Beeny v. California State Auto. Ass'n Inter-Ins. Bureau, supra; Lopez v. Foundation Reserve Ins. Co.,* 98 N.M. 166, 646 P.2d 1230 (1982); *Babcock v. Adkins, supra; Utica Mut. Ins. Co. v. Contrisciane, supra; Martin v. Milwaukee Mut. Ins. Co.,* 146 Wis.2d 759, 433 N.W.2d 1 (1988). The foregoing cases generally hold that because the Class Two insured's coverage is tied to occupancy of the covered motor vehicle, such occupant is not an "insured" for purposes of the policyholder's uninsured/underinsured motorist coverage on any other vehicle. This conclusion is also based on the reasonable expectations of the parties, as the court stated in *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. at 338–39, 473 A.2d at 1010–11:

"A claimant whose coverage is solely a result of membership in this class [Class Two] has not paid premiums, nor is he a specifically intended beneficiary of the policy. Thus, he has no recognizable contractual relationship with the insurer, and there is no basis upon which he can reasonably expect multiple coverage."

*See also Babcock v. Adkins,* 695 P.2d at 1343 ("Neither the passenger nor the purchaser of the policy would have any legitimate contractual expectation that one insured solely by reason of his presence in a vehicle would be entitled to a recovery under other policies belonging to the named insured covering vehicles which were not involved in the accident.").

### B.

State Farm also contends that its policy definition is compatible with the requirements of our uninsured/underinsured motorist coverage statute, which recognizes the distinction between Class One and Class Two insureds. W.Va.Code, 33–6–31(c), provides, in pertinent part:

"[T]he term 'insured' shall mean the named insured, and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above[.]"

The statute clearly differentiates between the named insureds [6] and their resident relatives, who are considered insureds "while in a motor vehicle or otherwise," and any other "person ... who uses ... the motor vehicle to which the policy applies" with the consent of the named insured.

This analysis of our statute brings about the same result that was obtained from our consideration of State Farm's policy definition. The named insured and his or her spouse and resident relatives are Class One insureds and enjoy broader uninsured/underinsured motorist protection because their coverage is not limited to their occupancy of a particular motor vehicle.[7] On the other hand, the Class Two insured is statutorily limited to coverage under the policy covering the vehicle he or she was occupying at the time of the accident.

Thus, we conclude that W.Va.Code, 33–6–31(c), creates two classes of insureds for purposes of uninsured/underinsured motor-

---

**6.** W.Va.Code, 33–6–31(c), defines "named insured" as "the person named as such in the declarations of the policy or contract and shall also include such person's spouse if a resident of the same household."

**7.** Although this case involves a Class Two insured, our discussion as to Class One insureds under W.Va.Code, 33–6–31(c), and State Farm's policy does not conflict with *Russell v. State Automobile Mutual Insurance Co.,* 188 W.Va. 81, 422 S.E.2d 803 (1992). In *Russell,* the insurance policy contained what was termed "antistacking" language which limited the liability of the insurer for uninsured and underinsured motorist coverage for a single accident to the amount contained on the declarations page. We concluded that this limitation precluded the insured from asserting underinsured motorist coverage on each of the two automobiles covered by the policy. In *Russell,* this Court acknowledged that under *State Automobile Mutual Insurance Co. v. Youler, supra,* "antistacking" language in an automobile insurance policy could not be used, in the face of W.Va.Code, 33–6–31(b), to defeat a Class One insured's claim for uninsured motorist benefits under a separate policy on another vehicle.

ist insurance. The first class includes the named insured, his or her spouse, and their resident relatives. The second class consists of the permissive users of the named insured's vehicle. This is consistent with the State Farm policy provisions.

In other jurisdictions with similar statutory provisions, courts have come to this same result. For example, in *Insurance Company of North America v. Perry*, 204 Va. 833, 836, 134 S.E.2d 418, 420 (1964), the Virginia Supreme Court of Appeals concluded that in enacting a virtually identical statute, the legislature had "intended to create two classes of insured persons, with different benefits accruing to each class." Although the case did not involve a stacking issue, the court stated:

"[W]hile the legislature provided for coverage to the named insured and the specified members of his household, 'while in a motor vehicle or otherwise', it expressly omitted the use of this language with relation to one 'who uses' the insured vehicle with permission. Had it been the intent of the legislature to afford the same protection to both classes, it could easily have achieved this result by placing the phrase, 'while in a motor vehicle or otherwise' in a different position in the statute or merely by repeating it when prescribing the rights of the permissive user." 204 Va. at 837–38, 134 S.E.2d at 421.

*Accord Cunningham v. Insurance Co. of N. Am.*, 213 Va. 72, 189 S.E.2d 832 (1972). *See also Thompson v. Grange Ins. Ass'n*, 34 Wash.App. 151, 660 P.2d 307, *review denied*, 99 Wash.2d 1011 (1983); *Continental Casualty Co. v. Darch*, 27 Wash.App. 726, 620 P.2d 1005 (1980), *review denied*, 95 Wash.2d 1013 (1981).

■ Our analysis of W.Va.Code, 33–6–31(c), is therefore congruent with that of other courts in regard to similar uninsured/underinsured motor vehicle statutes. Moreover, we also recognize, as did the court in *Thompson v. Grange Ins. Ass'n*, *supra*, that the provisions of W.Va.Code, 33–6–31(c), are mandatory through the use of the phrase "the term 'insured' shall mean" and cannot be altered by policy exclusions. We made this point in a more general fashion in Syllabus Point 1 of *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989):

"Statutory provisions mandated by the Uninsured Motorist Law, *W.Va.Code* § 33–6–31 [1988] may not be altered by insurance policy exclusions."

*See also Alexander v. State Auto. Mut. Ins. Co.*, *supra*; *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990).

■ Consequently, we hold that under W.Va.Code, 33–6–31(c), one who is entitled to uninsured or underinsured motorist benefits solely by virtue of his or her occupancy or use of the policyholder's vehicle may not stack the policyholder's uninsured/underinsured motorist coverage on another vehicle not involved in the accident.

Here, the plaintiff was seeking underinsured motorist benefits under the Ford policy solely because of her status as a passenger in the Cline Toyota. She was clearly a Class Two insured under the terms of the policy and under W.Va.Code, 33–6–31(c). The Ford policy did not provide underinsured motorist coverage for passengers in other vehicles owned by Mr. Cline. Consequently, the plaintiff was not an insured under the Ford policy and was not entitled to stack underinsured motorist coverage thereunder on top of the benefits she had already received.

■ The circuit court was clearly wrong in entering judgment in favor of the plaintiff on this issue. Under the facts of this case, State Farm is entitled to a judgment as a matter of law. We have held that where the evidence preponderates against the judgment entered by a trial court sitting without a jury, we will direct that a correct judgment be entered below. This rule is set out in Syllabus Point 5 of *Estate of Bayliss v. Lee*, 173 W.Va. 299, 315 S.E.2d 406 (1984):

" 'When, upon the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment;

and, if the case was tried by the court in lieu of a jury, this Court will make such finding and render such judgment on the evidence as the trial court should have made and rendered.' Syllabus Point 9, *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898 (1965)."

## IV.

For the reasons stated herein, the judgment of the Circuit Court of Cabell County is reversed and the case is remanded for entry of judgment in favor State Farm Fire and Casualty Company.[8]

Reversed and remanded with directions.

---

**8.** State Farm also contends that the lower court erred in awarding the plaintiff attorney's fees in the amount of $5,000. In view of the fact that the plaintiff's judgment has been reversed and judgment directed in favor of State Farm, the attorney's fee award should be vacated.