IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

**FILED**

**April 14, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0850

PROGRESSIVE MAX INSURANCE COMPANY,
Defendant Below, Petitioner
v.
CHRISTINE BREHM
Plaintiff Below, Respondent.

Appeal from the Circuit Court of Monongalia County
The Honorable Cindy S. Scott, Judge
Case No. 19-C-209

REVERSED AND REMANDED

No. 20-0851

PROGRESSIVE MAX INSURANCE COMPANY,
Defendant Below, Petitioner
v.
AMBER R. HESS,
Plaintiff Below, Respondent.

Appeal from the Circuit Court of Monongalia County
The Honorable Cindy S. Scott, Judge
Case No. 19-C-210

REVERSED AND REMANDED

_____

Submitted:  February 15, 2022
Filed:  April 14, 2022

Susan R. Snowden, Esq.                    Chad C. Groome, Esq.
Jackson Kelly PLLC                        John R. Angotti, Esq.
Martinsburg, West Virginia                David J. Straface, Esq.
Counsel for Petitioner                    ANGOTTI & STRAFACE, L.C.
                                          Morgantown, West Virginia
                                          Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WOOTON concurs and reserves the right to file a concurring Opinion.

SYLLABUS BY THE COURT

1.    "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

2.    " 'The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal.' Syl. Pt. 2, *Riffe v. Home Finders Assoc., Inc.,* 205 W.Va. 216, 517 S.E.2d 313 (1999)."  Syllabus Point 1, *Strum v. Swanson*, 221 W. Va. 205, 653 S.E.2d 667 (2007).

3.    "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

4.    "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes."  Syllabus Point 3, *Deel v. Sweeney*, 181 W. Va. 460, 383 S.E.2d 92 (1989).

5.    "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."  Syllabus Point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

i

6. "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syllabus Point 11, *Brooke B. v. Ray C., II* , 230 W. Va. 355, 738 S.E.2d 21 (2013).

7. "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies." Syllabus Point 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984).

8. "Underinsured motorist coverage is not available to a guest passenger unless the statute or policy language specifically provides for such coverage." Syllabus Point 3, *Alexander v. State Auto Mutual Insurance Co.*, 187 W. Va. 72, 415 S.E.2d 618 (1992).

WALKER, Justice:

Christine Brehm and Amber R. Hess were injured when another driver crashed into the Toyota Camry in which they rode, a rental vehicle operated by Susan Bindernagel. Brehm and Hess sought coverage under Bindernagel's underinsured motorist (UIM) coverage. Bindernagel's insurer, Progressive Max Insurance Company, denied coverage to Brehm and Hess because the rented Camry was not a "covered auto" under the policy. Brehm and Hess filed suits for declarations of coverage and Progressive counterclaimed. The circuit court granted summary judgment in favor of Brehm and Hess and against Progressive, finding that because they had been Bindernagel's guest passengers in the rented Camry when the crash occurred, Brehm and Hess were entitled to payment under the Bindernagel UIM coverage.

On appeal, Progressive argues that clear statutory language and the terms of Bindernagel's UIM coverage mandate reversal of summary judgment in favor of Brehm and Hess and entry of summary judgment in favor of Progressive. We agree. Brehm and Hess are neither "insured persons" under the terms of UIM coverage, nor "insureds" as that term is defined in the relevant statute, West Virginia Code § 33-6-31(c) (2015). So, we reverse the grant of summary judgment to Brehm and Hess and remand this case for entry of summary judgment in favor of Progressive.

1

# I. FACTUAL AND PROCEDURAL HISTORY

The facts in this case are cut-and-dried. Bindernagel purchased a West Virginia policy of auto insurance from Progressive effective April 29, 2017 to October 29, 2017 (Auto Policy). Bindernagel was the named insured and the only vehicle listed on the Auto Policy's declarations page was a 2011 Subaru Legacy. Bindernagel also purchased optional UIM coverage with bodily injury limits at $25,000 each person/$50,000 each accident (Bindernagel UIM Coverage).[1]

In July 2017, Bindernagel rented a Toyota Camry from Enterprise LLC. She was driving the rented Camry in Morgantown when a Subaru Outback operated by Dana Miller rear-ended the car. Bindernagel and her two passengers in the rented Camry, Brehm and Hess, were injured in the collision. Miller's insurer, USAA, offered the women policy limits ($50,000), to be split three ways, in exchange for releases. The women accepted the offer, conditioned upon certain assurances by Progressive.

The payment from Miller's policy did not fully compensate Bindernagel, Brehm, or Hess for their injuries. The three notified Progressive that they intended to make claims against the Bindernagel UIM Coverage. Progressive paid Bindernagel's claim but denied coverage to Brehm and Hess. In July 2019, Brehm and Hess filed complaints

---

[1] The underinsured motorist property damage coverage was limited to $25,000 each accident. Bindernagel's uninsured motorist (UM) coverage was subject to the same limits.

seeking declarations of coverage under the Bindernagel UIM Coverage. Progressive answered the following month and counterclaimed for declarations of no-coverage.

In its motions for summary judgment in June 2020, Progressive argued that neither Brehm nor Hess was an "insured person" under the Bindernagel UIM Coverage because the rented Camry was not a "covered auto" as defined in the Auto Policy; for the same reason, Progressive argued that Brehm and Hess did not meet the definition of "insured" found in West Virginia Code § 33-6-31(c) (2015).[2] Brehm and Hess responded that they were "insureds" entitled to coverage under the Bindernagel UIM Coverage because West Virginia Code § 33-6-29(b) (2015) operated to extend the Auto Policy to the rented Camry, which, in turn, made the rented Camry a vehicle to which "the policy" applied and them "insureds" under § 33-6-31(c). Brehm and Hess filed motions for summary judgment the next month with arguments mirroring those made in response to Progressive's motions.

---

[2] In pertinent part, § 33-6-31(c) states that

> [a]s used in [§ 33-6-31] . . . the term "insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above . . . .

On September 18, 2020, the circuit court denied Progressive's motions, declared there to be coverage for Brehm and Hess under the Bindernagel UIM Coverage, and granted summary judgment in favor of Brehm and Hess. The court described the issue before it as "whether the [rented Camry] involved in the accident is a 'covered auto' under the underinsured motorist section of Ms. Bindernagel's Progressive policy and whether Plaintiff[s] meet[] the definition of an 'insured person' under the underinsured motorist section of Ms. Bindernagel's Progressive policy." But the court did not find that the policy language disposed of the matter; instead, it adopted Brehm and Hess's position that West Virginia Code §§ 33-6-29(b) and -31(c) "require a guest passenger in a rental vehicle to be afforded underinsured motorist coverage under a policy of insurance that provides coverage to the rental vehicle in which she is a lawful passenger." Progressive now appeals the circuit court's orders of September 18, 2020.

## II. STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*."[3] Likewise, "'[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal.' Syl. Pt. 2, *Riffe v. Home Finders Assoc., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999)."[4] And, "[i]nterpreting a

---

[3] Syl. Pt. 2, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

[4] Syl. Pt. 1, *Strum v. Swanson*, 221 W. Va. 205, 653 S.E.2d 667 (2007).

4

statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."[5]  In sum, our review is plenary.

### III. ANALYSIS

Progressive's argument is straightforward:  Brehm and Hess are not "insured persons," as that term is defined in the Bindernagel UIM Coverage, so they are not entitled to coverage.  Brehm and Hess argue that the coverage definition of "insured person" is void because it conflicts with West Virginia Code §§ 33-6-29(b) and -31(c).  They conclude that when those statutes are read together, their status as UIM "insureds" entitled to payment under the Bindernagel UIM Coverage is clear.

We start with the insurance contract.  Under the terms of the Bindernagel UIM Coverage, Progressive is to pay "for damages that an insured person is legally entitled to recover from the owner or operator of . . . an underinsured motor vehicle because of bodily injury," and "an underinsured motor vehicle because of property damage," subject to other terms and conditions.  Determining whether a person is an "insured person" is the first step to determine whether he or she is entitled to coverage.  Under coverage terms,

> 1. "Insured person" means:
>
> A. you [i.e., "a person shown as a named insured on the declarations page . . . and the spouse of the named insured if

---

[5] Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

residing in the same household at the time of the loss], a relative, or a rated resident[6];

      B. any person while operating a covered auto with the permission of you, a relative, or a rated resident;

      C. any person occupying, but not operating a covered auto . . . .

Neither Brehm nor Hess is named as the insured on the declarations page of the Auto Policy, is related to Bindernagel, resided with Bindernagel, or operated the rented Camry. So, they must be "insured persons" under Subsection C or not at all. Under that subsection, a person's status as an "insured person" hinges on whether he or she was "occupying . . . a covered auto." Progressive does not dispute that Brehm and Hess occupied the rented Camry at the time of the crash, so we are left to question whether the rented Camry is a "covered auto." That term is defined in the Auto Policy's General Definitions section as

      A. any auto or trailer shown on the declarations page for the coverage applicable to that auto or trailer

      B. any additional auto;

      C. any replacement auto;

      D. a trailer owned by you.

---

[6] "Rated resident" is defined in the Auto Policy's General Definitions section.

"Additional auto" and "replacement auto" are also defined terms in the Auto Policy. In pertinent part, an "additional auto" is one the insured "become[s] the owner of during the policy period that does not permanently replace an auto shown on the declarations page . . . ."[7] And, again, in pertinent part, a "replacement auto" is one "that permanently replaces an auto shown on the declarations page . . . ."[8]

---

[7] "Additional auto" is fully defined in the Auto Policy's General Definitions section as:

> an auto you become the owner of during policy period that does not permanently replace an auto shown on the declarations page if:
>
> a. we insure all other autos you own;
>
> b. the additional auto is not covered by any other insurance policy;
>
> c. you notify us within 30 days of becoming the owner of the additional auto; and
>
> d. you pay any additional premium due.

[8] "Replacement auto" is fully defined in the Auto Policy's General Definitions section as:

> an auto that permanently replaces an auto shown on the declarations page. A replacement auto will have the same coverage as the auto it replaces if the replacement auto is not covered by any other insurance policy. However, if the auto being replaced had coverage under Part IV—Damage To A Vehicle, such coverage will apply to the replacement auto only during the first 30 days after you become the owner unless you notify us within the 30-day period that you want us to extend coverage beyond the initial 30 days. If the auto being replaced

There is no real dispute that the rented Camry was not a "covered auto."  The declarations page of the Auto Policy lists a Subaru Legacy, not a Toyota Camry.  The Camry cannot be an "additional auto," as defined in the Auto Policy, because Bindernagel had not purchased it; she merely rented it.  And the Camry cannot be a "replacement vehicle," either, because there is no indication in the record that it permanently replaced the Subaru Legacy listed on the Auto Policy's declarations page, and Brehm and Hess do not argue otherwise.  So, Progressive is correct that neither woman can be an "insured person" under the plain terms of the Bindernagel UIM Coverage because the rented Camry was not a "covered auto."

"Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes."[9]  Here, that rule means that the definition of "insured person" in the Bindernagel UIM Coverage will control (and Brehm and Hess are not entitled to coverage) *unless* that definition is more restrictive than the statutory definition of a UIM "insured" or it otherwise conflicts with the policy embodied there.  If it does, then the conflicting portion of the coverage definition is void, and the policy must be

---

did not have coverage under Part IV—Damage To a Vehicle, such coverage may be added, but the replacement auto will have no coverage under Part IV until you notify us of the replacement auto and ask us to add the coverage.

[9] Syl. Pt. 3, *Deel v. Sweeney*, 181 W. Va. 460, 383 S.E.2d 92 (1989).

"construed to contain the coverage required by West Virginia law."[10] So, the next step in our inquiry is to determine whether the definition of "insured person" in the Bindernagel UIM Coverage is contrary to West Virginia Code § 33-6-31(c) (2015).

West Virginia Code § 33-6-31 controls uninsured motorist (UM) and UIM coverage. Subsection (b) of that statute "contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle."[11] UM coverage is mandatory up to certain minimum limits.[12] UIM coverage is optional, although "insurance companies must offer coverage against underinsured motor vehicles in an amount not less than the limit of liability coverage purchased by the insured."[13] If the insured chooses to purchase UIM coverage, then, under § 33-6-31(b), the insurer must "pay the insured all sums which he or she is legally entitled

---

[10] *Gibson v. Northfield Ins. Co.*, 219 W. Va. 40, 47, 631 S.E.2d 598, 605 (2005).

[11] Syl. Pt. 1, in part, *Alexander v. State Auto. Mut. Ins. Co.*, 187 W. Va. 72, 415 S.E.2d 618 (1992).

[12] *Cox v. Amick*, 195 W. Va. 608, 614, 466 S.E.2d 459, 465 (1995) (noting that "while uninsured motorists coverage is mandatory up to certain minimum limits, *W.Va.Code,* 33–6–31(b) [1988] requires the insurer to provide to the insured the option of selecting limits which are above the mandatory uninsured coverage requirement").

[13] *Adkins v. Meador*, 201 W. Va. 148, 152 n.6, 494 S.E.2d 915, 919 n.6 (1997).

to recover as damages from the owner or operator of an . . . underinsured motor vehicle . . . .”

West Virginia Code § 33-6-31(c) defines “insured” for purposes of UM and UIM coverage as:

> the named insured[14] and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and *any person*, *except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies* or the personal representative of any of the above . . . .[15]

That statutory definition provides for two classes of insureds. The first class of insureds includes “[t]he named insured and his or her spouse and resident relatives” who “enjoy broader uninsured/underinsured motorist protection because their coverage is not limited to their occupancy of a particular motor vehicle.”[16] When a person seeking coverage does not fall into that first class—like Brehm and Hess—§ 33-6-31(c) specifies

---

[14] Section 33-6-31(c) defines “named insured” as “the person named as such in the declarations of the policy or contract and also includes such person’s spouse if a resident of the same household . . . .”

[15] W. Va. Code § 33-6-31(c) (emphasis added).

[16] *Starr v. State Farm Fire & Cas. Co.*, 188 W. Va. 313, 318, 423 S.E.2d 922, 927 (1992).

that coverage is available only if he or she was injured or damaged by an uninsured or underinsured motorist while using "the motor vehicle to which the policy applies."[17]

The definition of "insured person" in the Bindernagel UIM Coverage mirrors that structure. As detailed above, under the terms of the coverage, the insured and select others are entitled to UIM protection regardless of the vehicle they operated or occupied at the time of the accident (subject, of course, to relevant policy terms that are not relevant here). For all others, coverage depends on whether, at the time of the accident, they operated or occupied a "covered auto"—in terms of § 33-6-31(c), "the motor vehicle to which the [Auto Policy] applies." Given those parallel classifications, we do not find the definition of "insured person" in the Bindernagel UIM Coverage to conflict with the definition of "insured" in § 33-6-31(c).[18]

---

[17] *Id*. "Policy" is defined in West Virginia Code § 33-1-16 (1957) as "the contract effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers attached thereto and a part thereof."

[18] *See Starr*, 188 W. Va. at 319, 423 S.E.2d at 928 (concluding that UIM coverage definition of "insured" was not contrary to § 33-6-31(c) where it conditioned UIM coverage for those other than the named insured, his spouse, or his resident relative on permissive use of the insured vehicle).

Brehm and Hess contend that this Court's discussion of § 33-6-31(c) in *Starr* is irrelevant to the matter in hand because our focus in *Starr* was the stacking of UIM coverages. Stacking is not the issue in this case; however, our general discussion of the structure of § 33-6-31(c) in *Starr* makes plain the two-tiered structure of the definition of "insured" in the statute, as well as the impact of the class-one or -two status of the putative insured upon the scope of available coverage.

11

Brehm and Hess disagree based on their contention that the rented Camry was, in fact, a vehicle to which the Auto Policy applied by way of West Virginia Code § 33-6-29(b). Under that statute,

> [e]very policy or contract of liability insurance which insures a motor vehicle licensed in this state with collision, comprehensive, property or bodily injury coverage shall extend these coverages to cover the insured individual while operating a motor vehicle which he or she is permitted to use by a person, firm or corporation that owns the vehicle and is engaged in the business of selling, repairing, leasing or servicing motor vehicles.

Brehm and Hess assert that "[t]here is no question that West Virginia law renders Ms. Bindernagel's Progressive *insurance policy* applicable to a vehicle she rents," in this case, the rented Camry.[19] Brehm and Hess then reason that because § 33-6-29(b) makes the rented Camry a motor vehicle to which Bindernagel's Auto Policy applies, § 33-6-31(c) "operate[s] to render the UIM coverage of that vehicle applicable to [them] as" Bindernagel's passengers.

That argument does not withstand the plain language of § 33-6-29(b). Section 33-6-29(b) is not as broad as Brehm and Hess portray it; it does not extend a motor vehicle liability policy wholesale to cover the insured while he or she operates a rental vehicle. Instead, the statute plainly commands that every motor vehicle liability policy insuring a West Virginia-licensed motor vehicle "shall extend *these* coverages," that is,

---

[19] Emphasis added.

12

"collision, comprehensive, property or bodily injury coverage," to the insured when he or she operates a rental vehicle. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation,"[20] so we must take the Legislature at its word that § 33-6-29(b) extends only those coverages listed in the statute to cover the insured when he or she operates a rental vehicle. Nor can we read UIM coverage into the list because "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted."[21] It would be doubly wrong to do so, here, because "[i]n the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies."[22]

Brehm and Hess respond that the Legislature cannot have meant § 33-6-29(b) *not* to extend UIM coverage to an insured operating a rental vehicle because the Legislature also failed to mention UM coverage in that statute. Brehm and Hess warn that if we do not read UIM coverage into § 33-6-29(b), then we "must [also] believe that the Legislature intended for rental vehicles to be operated in this State without mandatory UM coverage[.]" But this argument skates past the definition of "insured" in § 33-6-31(c), applicable to both

---

[20] Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

[21] Syl. Pt. 11, *Brooke B. v. Ray C., II*, 230 W. Va. 355, 738 S.E.2d 21 (2013).

[22] Syl. Pt. 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984).

13

UM and UIM coverage. Under that definition, the insured and select others "enjoy broader uninsured/underinsured motorist protection *because their coverage is not limited to their occupancy of a particular motor vehicle*."[23] So, the Legislature did not need to list either UM or UIM coverage in § 33-6-29(b) to ensure that the protection covered the insured and select others when operating a rental vehicle.

Brehm and Hess want this Court to take a broad brush to §§ 33-6-29(b) and -31(c) to find that they are "insureds" entitled to payment under the Bindernagel UIM Coverage. That approach does not work in view of the plain language of those statutes.[24] And more to the point, it cannot work given the purpose of UIM coverage and its optional nature. Optional UIM coverage is intended to "enable *the insured* to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured."[25] The corollary of that purpose? "Underinsured motorist coverage is not available to a guest passenger unless the statute or policy language specifically provides for such coverage."[26] In this case, neither § 33-6-29(b), § 33-6-31(c), nor the terms of the

---

[23] *Starr*, 188 W. Va. at 318, 423 S.E.2d at 927 (emphasis added).

[24] As the plain language of §§ 33-6-29(b) and 33-6-31(c) resolves this appeal, we do not address Progressive's argument regarding § 33-12-32 (2004), relating to limited licenses for the sale of automobile rental coverage.

[25] *Deel*, 181 W. Va. at 463, 383 S.E.2d at 95 (emphasis added).

[26] Syl. Pt. 3, *Alexander*, 187 W. Va. at 72, 415 S.E.2d at 618.

Bindernagel UIM Coverage specifically provide for UIM coverage to those in Brehm and Hess's position, so the circuit court erred by entering summary judgment in their favor.

## IV. CONCLUSION

For the reasons stated above, we reverse the September 18, 2020, orders of the Circuit Court of Monongalia County, and remand for entry of orders granting summary judgment in favor of Progressive.

REVERSED AND REMANDED.

15